### ELDULA M. LADD

#### *vs.*

### THE BAPTIST CHURCH OF EAST RANDOLPH, VERMONT ET ALI.

### York.    Opinion August 28, 1925.

*In determining the construction and interpretation of a will the intent of the testator from the entire will must and should control, unless the intent cannot be carried out without conflicting with some positive rule of law, or be effectuated without violating some canon of construction so firmly established as to have become a fixed rule of law governing the transfer of property by will.*

In the instant case Eldula M. Ladd, as devisee, has an undivided half of all the real estate that the testatrix left, in life tenancy.

The remainder over is vested in The Baptist Church of East Randolph, Vermont.

A bill in equity seeking the construction and interpretation of the will of Edith M. Parker. A hearing was had on bill and answers and by agreement the cause was reported to the Law Court. Bill sustained. Decree in accordance with the opinion.

The opinion states the case.

*Clarence B. Rumery,* for complainant.

*Robert B. Seidel and Frank E. Parker,* for respondents.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, JJ.

DUNN, J. Bill in equity. On report. Where is the title to an undivided half part of all the real estate that Edith M. Parker, who

died domiciled at Biddeford, left?    Her probated will is not altogether
happy in its phrasing.    Its language, as bearing on the question
presented for consideration, is this:

First.    I give and devise to my husband, Frank E. Parker, all my
real estate to have use of the same during life, the property at the
decease of my husband to go to the next alive as will hereinafter
directs.

Second.    I give and bequeath to my husband all money in banks
where deposited together in our names.    After payment of just
debts, funeral charges and expenses of my husband, Frank E. Parker,
if any money left to go as directed by first clause of will aforesaid.

Third.    I give and bequeath to my mother, Eldula M. Ladd all
money in banks that is in my own name.

Fourth.    If either of the aforesaid Frank E. Parker or Eldula M.
Ladd are deceased prior to my death the property both real estate
and personal to go to the one then alive at the decease of both said
Frank E. Parker or Eldula M. Ladd the property both real estate
and personal to go as will hereinafter directs.

Fifth.    If neither of the aforesaid Frank E. Parker or Eldula
M. Parker (Ladd?) are alive at my death then I give, bequeath and
devise all my real estate and personal property after expenses are
paid to Maud J. Erickson to have use of same during life.

Sixth.    At the decease of all of the parties heretofore mentioned
in this will I direct the remainder of my estate both real and personal
to go to the Free Baptist Church of East Randolph, Vermont.

The bill was taken pro confesso as against Maud J. Erickson.
She could be let in under the will, only by surviving in reference
to the death of the testatrix, both the latter's widower and mother.
But she did not, and is out of the case.

The widower put himself out.    He elected to reject the provisions
of the will made in his behalf and take under the statute of descents.
What the testatrix intended should be for her widower is of object
now merely as it may tend to dispel any doubtfulness that may lurk
elsewhere in the will.

There is not nor ever was a religious organization by the name of
Free Baptist Church of East Randolph, Vermont.    There existed
the Free Will Baptist Church of the same town.    Mrs. Parker
joined that church, in her girlhood.    In corporate succession, five
years before the will was written, came The Baptist Church of East

Randolph, Vermont. It continued till the death of Mrs. Parker, the only organized church in the town. And she stood in its membership, and was of its contributing supporters, till she died. That Mrs. Parker meant to designate The Baptist Church of East Randolph, Vermont, in her will, is sufficiently certain.

By allowance from the probate judge, the widower had all the personal estate of the decedent, subject to paying her debts and the charges for administration on her estate. The mother and the church of the testatrix are in amicable opposition touching how the real estate is devised.

Had the widower not renounced the will, all the real estate would have gone to him for life, in virtue of the first dispositive clause. The exercise of his statutory privilege caused title to an undivided half of the realty to vest in him, in fee, the testatrix having died issueless. His waiver did more. It set at naught the tenancy that was designed for him, and this as effectually as his death could have done. Besides, the operative effect of the will, on the other half interest in the real estate, was thereby accelerated. This half, be it borne in mind, passes "to the next alive." One does not have to think the matter over, after reading the will in the knowledge the testatrix's mother is living, to feel assured that the mother is the "next alive." The undivided half of the real estate passes to her. But in what estate?

Mrs. Parker apparently made her will with this general image in her mind. All the real estate to her husband, so long as he might live, he outliving her. Certain money also to him for life. This provision has availability in ample latitude, seemingly after the husband's death, for the defrayment of any of his then unpaid debts, and for his funeral charges, and "if any left to go as directed by first clause." If, by reason of his dying, or, the possibility whereof the testatrix must be considered to have foreknown, because of his renouncing the will, the husband be off the stage, the mother is to come thereon again, having been on for a bequest of money at an earlier time. And should the mother predecease the testatrix and the husband, the husband as the "next alive" to have, additionally to that given him otherwise, the money designed for the mother, which she would fail to live to take. If neither husband nor mother should take, Maud Erickson to have what remained after expenses were paid, during life.

In the endeavor to arrive at testamentary intent, invert clauses four and five. And take the fifth in indirect quotation. If neither husband nor mother are living when I die, in substance runs the phraseology recorded, my real and personal property, the outstanding expenses first being paid, is for Maud Erickson. Fourth clause: If either mother or husband die before me, then the one living at my death, shall have the property, real and also personal.

Both husband and mother are alive. But the husband removes himself from the will. His act advances matters. "The property— to go to the one then alive at the decease of both said Frank E. Parker or Eldula M. Ladd the property both real and personal to go as will hereinafter directs." O, that in the will there were a few plainly effective sentences! Meaning, however, must be collected from the quoted words, read not in isolated text, but in relation with all else.

It is strenuously pressed that fee simple is given the mother, and that the devise over, added without pause for punctuation or capitalization, is inconsistent with and repugnant to the first giving. The argument of counsel is, that in any case the title to property having been once given away, it cannot be regained by the hand of the giver. And that in application to this case, the property was devised absolutely to the mother, she being the "next alive." There are notable decisions that seem this way. And there are notable decisions also the other way. And each and all assert that, in the guiding of the lights of the attendant circumstances, following the way of positive rules and recognized canons, intent as the whole will manifests it, is sought. There is no other test. And 'tis not in the test, so much as in its application, that difficulty lies.

Whatever the established theory may have been, on the topic of when a thing had been put by a testator beyond his power to recall, since the late cases of *Barry and Austin*, 118 Maine, 51, and *Gregg and Bailey*, 120 Maine, 263, in some quarters it is regarded as materially altered. It is not purposed to enter at large on the discussion of this subject. That discussion is exhausted. The views for the present order and contrariwise are elaborately enforced in Gregg and Bailey. To compare the conceptions and collate the series of related decisions would be nothing to purpose. There is but one sensible mode of proceeding, and it to accept and apply the prevailing opinion, regardless of whether it was agreed with or not. The fiat

of the majority is entitled to gracious acceptance. Any mode of proceeding otherwise, would be fraught with evils unnumbered, through the successive generations of the State.

By force of the cases of Barry and Austin and Gregg and Bailey, Eldula M. Ladd, as devisee in the case in hand, has the realty in life tenancy.

The remainder over is vested "as will hereinafter directs." The word "direct" is used in the sixth clause as predicate of the pronoun "I," and that pronoun finds testatrix as antecedent. "At the decease of all the parties heretofore mentioned—I direct the remainder of my estate both real and personal to go to the Free Baptist Church of East Randolph, Vermont." Certainly, the direction speaks of the "remainder." But the will confers on no life tenant an express general power of disposal. There is no power by implication. In the second clause, any money remaining after the payment of the husband's debts and funeral charges and expenses, is to pass in the manner provided by the first clause. Screened before the view of the testatrix, when the fifth clause was written, was the contingency of she herself living longer than her mother and her husband. And she wrote that if this happens, my real estate and personal property, after the expenses are paid, shall be for Maud J. Erickson, for the term of her life. The testatrix conjoins the real estate and the personal property remaining after her own expenses are paid. Such is the "remainder" of which the sixth clause disposes. It is the same property, namely, the real estate, and the personal property remaining after the expenses are paid, not what, if anything, might be undisposed of under any power, but the selfsame real estate and the personal property remaining, the body or the corpus of the complete estate, that the testatrix there gives in fee and in absoluteness, to the Baptist Church that she belonged to. Her will in respect to the personalty was counteracted. But the real estate remains.

*Bill sustained.*
*Decree in accordance with*
*    this opinion.*