1998 ME 84

Robert **MAIETTA**

v.

**Deborah Boyd WINSOR.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1997.

Decided April 28, 1998.

Richard P. Romeo (orally), Smith, Elliott, Smith & Garmey, P.A., Portland, for plaintiff.

Francis X. Quinn, Jr. (orally), Boynton Waldron Doleac Woodman & Scott, P.A., Portsmouth, NH, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] Robert Maietta appeals from the summary judgment, involving the interpretation of Hugh Erskine's will, entered in the Superior Court (Cumberland County, *Calkins, J.*) in favor of Deborah Winsor. On appeal Maietta asserts that the court erred by granting Winsor's motion to strike a deposition and by construing Hugh's will to pass an estate in fee simple absolute to property in Cape Elizabeth to Winsor's predecessor in title, Margaret Erskine. Maietta contends that, following a life estate in Margaret, the property passed to him by operation of Hugh's will. We disagree, and affirm the judgment.

[¶ 2] Hugh executed a last will and testament in June 1991, which stated in part:

FIRST: Having in mind all of my relatives, I give, devise and bequeath the rest, residue and remainder of my estate, real, personal and mixed, wherever found and however situate at the time of my decease, to my wife, Margaret Boyd Erskine. It is my desire that real estate with any buildings and furnishings located thereon at Surfside Road, Shore Acres, Cape Elizabeth, Maine, and known as Lot # 45, shall fall into this bequest; subject, however, that in the event that my wife should die holding said property, then the same shall pass to my grandson, Robert Maietta, presently of Boston, MA, to him, his heirs and assigns forever. In the event, however, that my wife should find that it is necessary or desirable to sell said land and buildings, she should create a separate savings account with the proceeds there-

from, utilizing the same for her care, welfare and maintenance during her lifetime, and whatever balance is left in said segregated account should at the time of my wife's death, fall into the residue of my estate.

Hugh died in June 1992 and the Cape Elizabeth property passed to his widow, Margaret, by operation of that will.[1]

[¶ 3] In January 1995 Margaret created a trust, the Margaret Boyd Erskine Trust, and named Winsor as its trustee and beneficiary. Margaret then conveyed the Cape Elizabeth property to Winsor as trustee by a deed that was recorded in the Cumberland County Registry of Deeds in February 1995. Margaret died in September 1995.

[¶ 4] Maietta filed the underlying complaint in this action in January 1996, claiming that he was the rightful owner of the Cape Elizabeth property.[2] While the complaint was pending in the Superior Court, Maietta commenced an action in the Cumberland County Probate Court in December 1996. The Probate Court appointed Maietta as successor personal representative of Hugh's estate. Maietta executed a deed of distribution of the Cape Elizabeth property to himself and recorded that deed in the Cumberland County Registry of Deeds in December 1996.

[¶ 5] In December 1996 Maietta filed a motion in the Superior Court for a summary judgment on his claim that he was the rightful owner of the property. On the same date Winsor filed a motion for a summary judgment on all counts of Maietta's complaint. Winsor also filed a motion to strike the deposition of Hugh's attorney, which purportedly addressed Hugh's intent at the time he executed his will, and any reference to that deposition in Maietta's statement of material facts in support of his motion for a summary judgment.

[¶ 6] Following a hearing the court granted Winsor's motion to strike the deposition of Hugh's attorney to the extent that he discussed Hugh's intent in drafting his will. The court concluded that Hugh's will created an estate in fee simple absolute in Margaret, leaving her with complete freedom to do with the property what she desired, and created no interest in Maietta. Accordingly, the court granted Winsor's motion for a summary judgment and denied that of Maietta. This appeal followed.

## I.

[¶ 7] The intent of the testator, as expressed in his will, controls the legal effect of his dispositions. 18–A M.R.S.A. § 2–603 (1998). Maietta asserts that the will is ambiguous and that the court should have considered the deposition of Hugh's attorney in determining Hugh's intent. We have stated that "[e]xtrinsic evidence may be admitted to resolve any ambiguity in the will." *Estate of Leighton,* 638 A.2d 723, 724 (Me.1994). There is, however, "a clear distinction between the admission of extrinsic evidence of *facts and circumstances* existing at the time of the execution of the will and the admission of *testator's declaration of intent,*" the former being admissible and the latter inadmissible. *First Portland Nat'l Bank v. Kaler–Vaill Memorial Home,* 155 Me. 50, 62, 151 A.2d 708, 714 (1959). Even assuming Hugh's will contains an ambiguity, the deposition of Hugh's attorney is an inherently unreliable and inadmissible expression of the testator's intent. *Lord v. Society for the Preservation of New England Antiquities, Inc.,* 639 A.2d 623 (Me.1994); *Estate of Utterback,* 521 A.2d 1184 (Me.1987). Consequently, the court was correct in striking the deposition insofar as it addresses Hugh's intent.

---

1. Hugh's will was probated in New Hampshire. Margaret acted as executrix, and, apparently believing that she had completed the administration of the estate, closed the estate in April 1994. Margaret never executed a deed of distribution to release the Cape Elizabeth property from Hugh's estate to herself. This omission has no bearing on the resolution of Maietta's appeal because it does not affect the nature of the estate created in Margaret by operation of Hugh's will.

2. Maietta also claimed that Winsor was a trespasser on the property and that she used undue influence on Margaret when she allegedly induced Margaret to transfer the property to the trust. Because we find that Hugh's will created no interest in the property in Maietta, as discussed below, Maietta has no standing to raise either claim. Thus it is unnecessary to address either of these claims.

## II.

[¶ 8] "When reviewing a grant of summary judgment, we view the evidence in the light most favorable to the party against whom the judgment has been granted, and review the trial court's decision for error of law." *Keyes Fibre Co. v. Lamarre*, 617 A.2d 213, 214 (Me.1992) (citation omitted).

[¶ 9] Maietta asserts that even without looking to extrinsic evidence of Hugh's intent, Hugh's will created in Margaret an implied life estate. Although she could convey her life estate to Winsor, Maietta argues, on Margaret's death the fee would pass to him. We disagree. The Probate Code provides the guide for our interpretation of the first article of the will, as follows:

§ 2–604. **Construction that will passes all property; after-acquired property**

A will is construed to pass all property which the testator owns at his death including property acquired after the execution of the will. A devise of property conveys all the estate of a devisor unless it appears by his will that he intended to convey a lesser estate.

18–A M.R.S.A. § 2–604 (1998). We examine the will, therefore, to determine Hugh's intent.

[¶ 10] The second sentence of Article First, purportedly creating an interest in the property in Maietta if Margaret should die still owning it, is prefaced with the phrase "It is my desire." It is, therefore, precatory. *See Estate of O'Connor*, 615 A.2d 1179, 1180 (Me.1992) (the phrase "I do not wish" signals precatory intent). The third sentence, purportedly allowing Margaret to sell the property during her lifetime but to use only the portion of the proceeds necessary for "her care, welfare and maintenance," is similarly phrased in precatory terms. The will provides that Margaret may sell the property "if it is necessary or desirable," that she "should" create a separate account for the proceeds, and that any proceeds remaining at her death "should" fall into the residue of Hugh's estate. Such language, which indicates what the testator "regards as a wise disposition, ... leaving to some other person, frequently the person to whom the property

is given by some other provision of the instrument, full discretion to ignore such advice and make a different disposition of the property," is typically deemed precatory. 1 BOWE & PARKER, PAGE ON WILLS § 5.19, at 211–12 (4th ed.1960). In combination, these last two sentences of the first article express Hugh's desire for what should happen to the Cape Elizabeth property following his death. They do not, however, constitute a limitation on Margaret's right to dispose of the property as she saw fit. Therefore, the court was correct in its conclusion that Hugh's will created an estate in fee simple in Margaret, not an implied life estate. Accordingly, the will created no interest in Maietta.

The entry is:

Judgment affirmed.

